# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8295 | **DATE** | 12/30/2002 |
| **CASE TITLE** | Najieb vs. William Chrysler Plymouth | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: This Court denies Najieb's motions to deem her submitted facts admitted (22-1& 22-2)) and to strike (13-1) William Chrysler's motion for summary judgment. With regard to William Chrysler's motion for summary judgment (10-1) we grant its motion on Counts II and III, and deny its motion on Counts I and V, and grant in part and deny in part its motion on Count IV. We deny Najieb's motion for summary judgment (17-1) on Counts I, III, IV and V.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 31 2002 | |
| | Notified counsel by telephone. | | date docketed | **33** |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 12/30/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| GL | courtroom deputy's initials | | GL mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
02 DEC 30 PM 4:40
Date/time received in central Clerk's Office

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TAWANA NAJIEB, )
)
Plaintiff, )
)
v. ) Case No. 01 C 8295
)
WILLIAM CHRYSLER-PLYMOUTH, )
)
Defendant. )
)

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff, Tawana Najieb filed a five-count complaint against Defendant William Chrysler-Plymouth ("William Chrysler" or "Dealership") alleging violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691(d) (Count I), the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681m (Count II), the Truth in Lending Act ("TILA"), 15 U.S.C. §1601 *et seq.* (Count III), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 and 815 ILCS 505/2C 2C, (Count IV), and trespass to chattel (Count V). William Chrysler filed a motion for summary judgment on all five counts. Najieb filed motions to deem her submitted facts admitted and to strike William Chrysler's motion for summary judgment for failure to comply with Local Rule 56.1. Najieb also filed a cross motion for summary judgment on Counts I, III, IV, and V. For the reasons set forth below, this Court denies Najieb's motions to deem her submitted facts admitted and to strike William Chrysler's motion for summary judgment. With regard to William Chrysler's motion for summary judgment, we grant its motion on Counts II and III, deny its motion on Counts I and V, and grant in part and deny in part its motion on Count IV. We deny Najieb's motion for summary judgment on Counts I, III, IV, and V.

*33*

# BACKGROUND

## I.    RULE 56.1

This Court, in review of the parties' Local Rule 56.1 Statements, is frustrated, in large part, because of William Chrysler's disregard for its obligations under the Rule.[1] The Northern District promulgated Local Rule 56.1 "to assist the court in quickly and effectively identifying the disputed and undisputed material facts. It is designed to conserve judicial time and resources." Sunil R. Harjani, *Local Rule 56.1: Common Pitfalls in Preparing a Summary Judgment Statement of Facts*, CBA Record, Oct. 2002, at 42 (citing *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000)).[2] The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." *Bordelon*, 233 F.3d at 527 (quoting *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1990)).

Local Rule 56.1(a)(3) requires the movant to file a statement of undisputed material facts that "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting material relied upon to support the facts set forth in

---

[1]Najieb was similarly frustrated, as evidenced by her motions to deem her submitted facts admitted and to strike William Chrysler's motion for summary judgment for failure to comply with Rule 56.1. We deny Najieb's motion to deem her submitted facts admitted. This Court thoroughly reviewed the Rule 56.1 statements filed by both parties. A substantial portion of William Chrysler's Rule 56.1 pleadings fall short of the Rule's standards. However, William Chrysler does properly plead certain facts. In the Background section of this Opinion, we discuss in detail which facts are stricken, which facts are admitted, and which facts are contested under Rule 56.1. *See infra* p. 2-6. We discuss Najieb's motion to strike William Chrysler's motion for summary judgment in the Analysis section of this Opinion. *See infra* p.8, n.11.

Najieb has also asked that this Court impose sanctions against William Chrysler under 28 U.S.C. §1927 for its abuse of Rule 56.1. *See* Pl. Rule 56.2 [sic] Statement. This Court will address Najieb's request outside of this opinion, in due course. At that time, this Court will also consider entering an order to show cause why sanctions should not be imposed.

[2]We urge both parties, but counsel for William Chrysler in particular, to review Harjani's article as well as the instructive comments on Rule 56.1 in *Malec v. Sanford*, 191 F.R.D. 581, 582-87 (N.D.Ill. 2000).

that paragraph." William Chrysler, in its twenty-two paragraph Statement of Facts, repeatedly fails to refer to affidavits, the record, or other material to support the facts it sets forth. In place of making the required citations, William Chrysler refers to Najieb's complaint as well as its response to the complaint. *See* Def. Statement of Material Facts at ¶¶5, 7-10, 16-22. However, it is improper to cite to a complaint or a response to the complaint as support for a statement of fact. *See* L.R. 56.1(a)(3); *see also Burton v. Nelson*, 1998 WL 46900 at *1 n.1 (N.D.Ill. Feb. 3, 1998) (disregarding statement of fact that cited only to an amended complaint). As such, this Court strikes those portions of William Chrysler's Statement of Facts which refer to Najieb's complaint or William Chrysler's response. Najieb's responses to the affected statements of fact are deemed admitted to the extent that they are uncontested by the properly pled portions of William Chrysler's Rule 56.1 filings.

Local Rule 56.1(b)(3)(A) requires that the nonmovant file a similarly structured, concise response to the movant's statement. The nonmovant must also submit a statement "of any additional facts that require the denial of summary judgment." L.R. 56.1(b)(3)(B). In this case, Najieb's response adheres to the provisions of Rule 56.1(b)(3).[3] William Chrysler's reply is not similarly compliant. Like all other statements filed under Rule 56.1, the movant's response must be concise. *See* L.R. 56.1(a)(3) (last unnumbered paragraph). Nearly all of William Chrysler's responses, however, contain narrative sections and recitations of the standards governing summary judgment motions and other law. *See* Def. Reply to Pl. Statement of Material Facts at ¶¶5, 7-22. This Court therefore strikes the above cited portions of William Chrysler's responses. *See Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D.Ill. 2000) (noting that a Rule 56.1 statement "is not intended as a forum for factual or legal argument.").

---

[3]Najieb incorrectly titled her pleading "Plaintiff's Rule 56.2 Statement," hereinafter referred to as Plaintiff's Statement of Facts. Local Rule 56.2 provides notice to pro se litigants opposing summary judgment. Local Rule 56.1(b)(3) governs Najieb's statement as a nonmovant responding to the William Chrysler's statement of facts and her statement of additional facts.

William Chrysler's response to Najieb's submission of additional facts is similarly deficient. Local Rule 56.1(a)(3) requires that any response by the movant to the nonmovant's submission "satisfy the same requirements as the nonmovant's response." *Malec*, 191 F.R.D. at 584. Thus, "in the case of disagreement," the movant must include "specific references to the affidavits, parts of the record, and other materials relied upon." L.R. 56.1(b)(3)(A). A general denial is insufficient to rebut a nonmovant's statement of additional facts. *See Malec*, 191 F.R.D. at 584. Yet the only response William Chrysler provides to each of Najieb's sixty-six additional facts is "Denied." Def. Amend. Reply to Pl. Statement of Material Facts at ¶¶ 23-79. Thus, this Court strikes William Chrysler's response to Najieb's additional facts and deems those facts admitted to the extent that they are uncontested by properly pled portions of William Chrysler's Rule 56.1 filings.

## II.    FACTS

The following facts are culled from the properly pled portions of the parties' Local Rule 56.1 Statements of Material Facts and accompanying exhibits. On January 27, 2001, Najieb went to William Chrysler to purchase a vehicle for her daughter. Najieb selected a 1998 Chrysler Cirrus ("Cirrus"). William Werthman, an employee of William Chrysler, pulled Najieb's credit report while Najieb was at the Dealership.[4] William Chrysler tendered a Vehicle Sales Order ("Order") to Najieb for the Cirrus which stated a total sales price of $13,995.00. As part of the transaction, Najieb made a $1,000 down payment.

---

[4] In his deposition, Werthman explains that the purpose of pulling a prospective customer's credit report is "to know who you are doing business with." Werthman Dep. at 17. Werthman adds that William Chrysler reviews a prospective customer's credit report in order to decide whether to enter into a Retail Installment Contract ("RIC") with the individual and thus seek financing on the individual's behalf. *See id.* at 22-23.

Najieb also entered into a Retail Installment Contract ("RIC") with William Chrysler for the unpaid balance and additional fees.[5] The RIC set forth that the total amount would be financed at a 15.0% annual percentage rate ("APR") – a figure Werthman calculated based on his "best opinion." Werthman Dep. at 14-15. Werthman congratulated Najieb on her purchase and announced over the Dealership's loudspeaker that a sale had been made. Najieb drove the Cirrus home, purportedly without realizing that her purchase and the terms governing it were conditioned on William Chrysler obtaining financing from an outside source on her behalf. The condition was made explicit in the Vehicle Sales Order, which stated, in relevant part, "THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE AND IN THE EVENT OF A TIME SALE DEALER SHALL NOT BE OBLIGATED TO SELL UNTIL APPROVAL OF THE TERMS HEREOF IS GIVEN BY A BANK OR FINANCE COMPANY WILLING TO PURCHASE A RETAIL INSTALLMENT CONTRACT BETWEEN THE PARTIES."[6]

After January 27, 2001, the Dealership contacted the following seven financial institutions in an attempt to obtain financing on Najieb's behalf: Harris Bank, Firstar Bank, Wells Fargo Financial, Fifth Third Bank, Arcadia Financial, Bank One, and National City. Each institution declined to extend credit

---

[5]One of the fees listed in the RIC was a $420.00 charge for GAP Guardian insurance. GAP Guardian insurance provides a lender with the remaining balance due on a vehicle if an owner suffers the total loss of the vehicle due to theft or accident. *See* Werthman Dep. at 27. The fee for the insurance coverage was included in the amount financed, but excluded from the finance charge under the RIC.

[6]Don Cranley of William Chrysler states that the Dealership itself could extend credit to customers that enter into RICs. *See* Cranley Dep. at 94, 96. He explains, however, that William Chrysler's practice is to seek financing on behalf of its customers from outside sources. *See* Cranley Dep. at 93. William Chrysler successfully structures financing in this manner for over two hundred customers annually. *See* Werthman Dep. at 25.

to Najieb based on her insufficient credit history.[7] While William Chrysler received notice of each

institution's decision, Najieb only received such notice from Bank One and National City.[8]

A William Chrysler employee contacted Najieb by telephone the week of February 11, 2001 and

informed her, without further explanation, that it was unable to obtain financing for her purchase.[9]

Consequently, the Dealership asked Najieb to return the Cirrus. On February 14, 2001, Najieb returned

the Cirrus to William Chrysler. William Chrysler did not return to Najieb the $1,000 down payment she

had made on the vehicle. The Dealership suggested that she "try out" a Ford Escort ("Escort") while

---

[7]William Chrysler attached the affidavits of William Chrysler employee Don Cranley, Firstar Bank employee Brian Gille, and Bank One employee Mark Haugen, as Exhibits 3, 4, and 17, respectively, to its Motion for Summary Judgment. The Dealership cites to these affidavits in support of its assertion that William Chrysler neither evaluated Najieb's credit history nor decided whether Najieb would receive financing for her purchase. *See* Def. Statement and Facts, ¶¶11-15. Najieb protests that Cranley's Affidavit is not based on personal knowledge and is conclusory in violation of Federal Rule of Civil Procedure 56(e). *See* Pl. Motion to Strike at ¶11. We agree. In his Affidavit, Cranley fails to set forth his personal knowledge of the matter before this Court. We therefore strike Cranley's Affidavit.

Najieb argues that this Court should also strike the Affidavits of Brian Gille and Mark Haugen because the individuals were not identified as witnesses in William Chrysler's Federal Rule of Civil Procedure 26(a) disclosures. *See* Pl. Motion to Strike at ¶7. This Court has broad discretion to determine whether to issue discovery sanctions. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976). We decline to strike the Affidavits of Gille and Haugen. Najieb further asserts that the Affidavits are not based on personal knowledge, and are conclusory in violation of Rule 56(e). *See* Pl. Motion to Strike ¶¶8-10. We disagree. According to their Affidavits, Gille and Haugen were involved in evaluating Najieb's credit history for Firstar and Bank One, respectively, without any input from William Chrysler. *See* Def. Memo., Ex. 4, 17. Gille and Haugen thus describe their personal knowledge of the matter without setting forth any ultimate fact or conclusion of law.

[8]Neither party provided this Court with the information Najieb received from Bank One and National City. Najieb points out that William Chrysler did not include the written notice each financial institution provided to the Dealership in its Rule 26(a) discovery disclosures. *See* Pl. Statement of Facts at ¶15. This Court has broad discretion to determine whether to issue discovery sanctions. *See Nat'l Hockey League*, 427 U.S. at 642. We decline to strike Paragraph 15 of William Chrysler's Statement of Material Facts which relies on these documents.

[9]In her deposition, Najieb states that William Chrysler also sent her a letter "saying they [sic] was [sic] sorry" that it was unable to obtain financing on her behalf. Najieb Dep. at 85. Neither party provided the letter, or the date of the correspondence to this Court.

it searched for financing on her behalf. William Chrysler prepared a RIC and other documents which set forth Najieb's purchase of the Escort. Najieb's signature appears on those documents. She drove to William Chrysler on February 15, 2001 to return the Escort, but was told to keep the vehicle for another day. On that date, the Dealership informed her that it was unable to find financing for a vehicle similar to the Cirrus. William Chrysler obtained financing from Harris Bank on February 17, 2001 for the Escort on Najieb's behalf.[10]

While Najieb had the Escort, Najieb called William Chevrolet to inquire about purchasing a vehicle from that Dealership. On February 16, 2001, Najieb purchased a Chevrolet Cavalier ("Cavalier") from William Chevrolet. Najieb left the Escort with Lawrence Phillips, an employee of William Chevrolet, believing that Phillips would return the vehicle to William Chrysler on her behalf. William Werthman of William Chrysler telephoned Najieb on February 17, 2001, informing her that she had purchased two vehicles, the Escort and the Cavalier. Najieb insisted that she had only purchased the Cavalier. That evening, representatives from William Chrysler drove the Escort to Najieb's home, leaving the keys with Najieb's husband. Soon thereafter, Najieb returned the Escort to William Chrysler. On February 20, 2001, William Chrysler tendered a check in the amount of $1,000 to Najieb and rescinded the RIC governing Najieb's purchase of the Ford.

Najieb subsequently filed this action alleging violations of the ECOA, 15 U.S.C. §1691(d) (Count I), the FCRA, 15 U.S.C. §1681m (Count II), the TILA, 15 U.S.C. §1601 *et seq*. (Count III), the ICFA, 815 ILCS 505/2 & 2C. (Count IV), and trespass to chattel under Illinois law (Count V). William Chrysler moved for summary judgment on all counts. Najieb moved to deem her submitted facts as

---

[10]Najieb asks this Court to strike the Harris Bank document, on which this fact is based, for William Chrysler's failure to include the document in its Rule 26(a) discovery disclosure. *See* Pl. Statement of Facts at ¶7. This Court has broad discretion to determine whether to issue discovery sanctions. *See Nat'l Hockey Society*, 427 U.S. at 642. We elect to not sanction William Chrysler for its failure to disclose the document before filing its motion for summary judgment.

admitted and to strike Najieb's motion for summary judgment. She also filed a cross motion for summary judgment on Counts I, III, IV, and V.

**ANALYSIS**

## I.  STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c).  A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (citations omitted).  Once the moving party has met this burden of production, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c).  In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

In moving for summary judgment, a party should ensure that its legal memoranda contain two integral parts: a fact section and an analysis section.  William Chrysler failed to include a statement of facts in its memoranda of law. *See* Def. Memo.; *see also* Def. Reply Memo.  In place of such a statement, the Dealership asked this Court to rely on its woefully inadequate Local Rule 56.1 filings, to which it did not even cite in its legal memoranda.[11] *See* Def. Reply to Pl. Motion to Strike at 1-5.  Rule

---

[11]Najieb filed a motion to strike William Chrysler's motion for summary judgement based on William Chrysler's failure to cite to its Rule 56.1 statement of facts in its legal memoranda. *See* Pl. Motion to Strike at 2.  At a minimum, a party, in its legal memoranda, should cite only to portions of the record that it included in its Rule 56.1 statement of facts. *See Malec*, 191 F.R.D. 581, 586 (N.D.Ill. 2000).  A party can cite directly to those portions of the record rather than to the paragraphs

56.1 statements, however, "are not intended to be substitutes for a statement of facts section of a memorandum of law." *Cleveland v. Prairie State College*, 208 F.Supp.2d 967, 972-73 (N.D.Ill. 2002) (quoting *Duchossois Indus., Inc. v. Crawford & Co.*, 2001 WL 59031, at *1 (N.D.Ill. Jan. 19, 2001)); *see also Malec*, 191 F.R.D. 581, 585-86 (N.D.Ill. 2000). This Court could deny William Chrysler's motion for summary judgment on account of the Dealership's faulty briefing. The interests of judicial economy and justice, however, compel us to evaluate the merits of the parties' motions for summary judgment.

## I.    ECOA

In Count I, Najieb claims that William Chrysler violated the ECOA, 15 U.S.C. §1691, by failing to satisfy the Act's notice requirements. Under the ECOA, "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. §1691(d)(2). The Act defines "adverse action" as the "denial or revocation of credit." 15 U.S.C. §1691(d)(6). William Chrysler, however, asserts that it had no obligation to provide such notice to Najieb because it is not a creditor under the Act. We disagree.

The ECOA defines "creditor" to include "any person who regularly arranges for the extension, renewal, or continuation of credit." 15 U.S.C. §1691a(e). This jurisdiction has found the above definition to encompass car dealerships that arrange for the extension of credit on behalf of customers by submitting those customers' credit applications to financial institutions. *See Mungia v. Tony Rizza Oldsmobile*, 2002 WL 554504, at *1-2 (N.D.Ill. April 15, 2002); *see also Burns v. Elmhurst Auto Mall*, 2001 WL 521840, at *2 (N.D.Ill. May 16, 2001); *Williams v. Thomas Pontiac-GMC-Nissan-Hyundai*, 1999 WL 787488, at *3 (N.D.Ill. Sept. 24, 1999). William Chrysler is such a dealership. It concedes

---

of its Rule 56.1 statement of facts that contain the same citations. William Chrysler's citations meet the citation requirement set forth above. We therefore deny Najieb's motion to strike William Chrysler's motion for summary judgment.

that it "accommodates its customers by having them fill out the applicable finance forms and then tender

such forms to various lenders." Def. Memo. at 4. Indeed, in this case, William Chrysler submitted

Najieb's finance forms to the following seven lenders in an effort to obtain financing on her behalf:

Harris Bank, Firstar Bank, Wells Fargo Financial, Fifth Third Bank, Arcadia Financial, Bank One, and

National City. *See* Def. Memo., Ex. 7, 9-14. William Chrysler is therefore a creditor under the ECOA.[12]

William Chrysler further asserts, however, that even if it is a creditor under the ECOA, it was

not obligated to provide notice to Najieb of the adverse action. According to William Chrysler, the

seven financial institutions that declined to extend credit to Najieb were solely responsible for providing

such notice. We disagree. The ECOA provides that where a third party asks a creditor to extend credit

to an individual, "the notification and statement of reasons required by this subsection may be made

directly by such creditor, *or* indirectly through the third party." 15 U.S.C. §1691(d)(4) (emphasis

added). In this case, William Chrysler acted as a third party in asking the seven financial institutions

to extend credit to Najieb. Najieb avers that she did not receive written notification from five of the

seven financial institutions. *See* Najieb Aff. at ¶20. Because neither party produced the letters from

Bank One and National City, we do not know if either letter complied with the requirements of the

ECOA. In her deposition, Najieb stated that she received a letter from William Chrysler "saying they

[sic] was [sic] sorry" that it was unable to obtain financing on her behalf. Najieb Dep. at 85. Because

neither party produced this letter, we do not know if it complied with the requirements of the ECOA.

Consequently, this Court denies both parties' motions for summary judgment on Count I.

---

[12]We reject Najieb's suggestion that William Chrysler may also be a creditor under the
ECOA because it "*regularly* extends, renews, or continues credit." *See* Compl. at ¶14 (emphasis
added) (quoting 15 U.S.C. §1691a(e)). Don Cranley of William Chrysler states that the Dealership
*could* itself extend credit to its customers. *See* Cranley Dep. at 94, 96. Najieb does not provide any
evidence that the Dealership *does* itself extend credit to customers on a regular basis or otherwise.
Indeed, Cranley explains that William Chrysler's practice is to seek financing on behalf of its
customers from outside sources. *See* Cranley Dep. at 93.

## II.    FCRA

In Count II, Najieb alleges that William Chrysler violated the FCRA, 15 U.S.C. §1681m, by failing to provide proper notice of an adverse action. The Act requires an entity to provide electronic, written, or verbal notice of "any adverse action [taken] with respect to any consumer that is based in whole or in part on any information contained in a consumer report." 15 U.S.C. §1681m. Under the FCRA, an "adverse action" is any "action taken or determination that is adverse to the interests of a consumer." 15 U.S.C. §1681a(k)(B)(iv)(II). William Chrysler contends that Najieb does not offer any material fact to suggest that it took adverse action against her based in whole or in part on information contained in her credit report. We agree.

William Chrysler employee William Werthman pulled Najieb's credit report while she was at the Dealership on January 27, 2001. *See* Werthman Dep. at 17-18. Werthman explains that the purpose of pulling a prospective customer's credit report is "to know who you are doing business with." *Id* at 17. He adds that William Chrysler reviews a prospective customer's credit report in order to decide whether to enter into a Retail Installment Contract ("RIC") with that individual and thus seek financing on his or her behalf. *See id.* at 22-23. After reviewing Najieb's credit report, the Dealership entered into a RIC with Najieb for her purchase of the Cirrus, the terms of which were governed by the Vehicle Sales Order. *See* Def. Memo, Ex. 6. In doing so, Najieb asserts, William Chrysler itself extended credit to her. *See* Pl. Response Memo. at 14. In support of her claim, Najieb refers to William Chrysler employee Don Cranley's admission that the Dealership itself could have extended credit to Najieb. See Cranley Dep. at 94, 96. Significantly, however, Najieb ignores Cranley's statement that the Dealership did not extend credit to Najieb. *See id.* at 96. Cranley explains that William Chrysler's practice is to seek financing on behalf of its customers from outside sources, not from itself. *See* Cranley Dep. at 93. Because William Chrysler did not extend credit to Najieb, it could not possibly have revoked credit from Najieb.

11

Indeed, the terms governing Najieb's purchase of the Cirrus indicate that William Chrysler did not extend credit to her. The Vehicle Sales Order stated, in pertinent part, "IN THE EVENT OF A TIME SALE[13] DEALER SHALL NOT BE OBLIGATED TO SELL UNTIL APPROVAL OF THE TERMS HEREOF IS GIVEN BY A BANK OR FINANCE COMPANY WILLING TO PURCHASE A RETAIL INSTALLMENT CONTRACT BETWEEN THE PARTIES." Def. Memo, Ex. 6. Najieb's purchase was therefore conditioned on William Chrysler obtaining financing from an outside source, *not* from itself, on her behalf. The condition in the Vehicle Sales Order was not met when all seven financial institutions William Chrysler contacted on Najieb's behalf declined to extend credit to her.[14]

William Chrysler's statements to Najieb further demonstrate that William Chrysler did not extend credit to her. A William Chrysler employee contacted Najieb by telephone the week of February 11, 2001 and asked her to return the Cirrus to the dealership. *See* Najieb Aff. at ¶2. Najieb admits that the only verbal statement William Chrysler made to her regarding the matter was that it "couldn't find anyone to finance me." *See* Najieb Dep. at 85-86. The depositions of William Chrysler employees Don Cranley and William Werthman fail to provide any further explanation. We therefore grant William Chrysler's motion for summary judgment on Count II.

---

[13]In the context of automobile financing, "time sale" refers to the conditional sale of a vehicle that is governed by a RIC or "time sale" contract. *See* Mark D. Lonergan, *Auto Finance and Lease Litigation*, 1301 Practising Law Institute/Corporate Law 349, 351 (2002).

[14]It is possible that William Chrysler submitted Najieb's credit report to each financial institution. Such a submission, however, does not constitute an adverse action under the FCRA. *See* 15 U.S.C. §1681a(k)(B)(iv)(II) (definition of adverse action); *see also Treadway v. Gateway Chevrolet, Oldsmobile*, 2002 WL 554513 at *1 (N.D.Ill. April 12, 2002) ("the supplying of [credit] information does not make a defendant a user of credit reports."). There is no evidence that the Dealership was further involved in any financial institution's decision to decline to extend credit to Najieb. Najieb concedes that she has "no knowledge of any negotiations between Defendant and these finance companies." Najieb Aff. at ¶20. Firstar employee Brian Gille and Bank One employee Mark Haugen do have such knowledge. *See* Def. Memo, Ex. 4, 17. Both men aver their respective institutions evaluated Najieb's credit history without any input from William Chrysler. *See id.*

## III.    TILA

In Count III, Najieb asserts that William Chrysler violated the TILA, U.S.C. §1601 *et seq.*, by failing to provide her with the proper disclosures as required by the Act and Regulation Z, 12 C.F.R. §226. As an initial matter, William Chrysler contends that it was not required to provide such disclosures to Najieb because it is not a creditor under the Act. We disagree. Congress enacted the TILA "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit." 15 U.S.C. §1601(a). In doing so, Congress "delegated expansive authority to the Federal Reserve Board ["FRB"] to elaborate and expand the legal framework governing commerce in credit." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980). The FRB promulgated Regulation Z, 12 U.S.C. §226, to implement the Act's provisions. *See id.* Regulation Z defines a "creditor" as an entity "(A) wh[ich] regularly extends consumer credit . . ., and (B) to wh[ich] the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract." 12 C.F.R. §226.2(a)(17)(i).

In *Riviere v. Banner Chevrolet*, the Fifth Circuit noted that Regulation Z includes an official FRB staff explanation of the term creditor. *See* 184 F.3d 457, 461 (5th Cir. 1999). The explanation provides that "[i]f an obligation is initially payable to one person, that person is the creditor *even if the obligation by its terms is simultaneously assigned to another person*." *Id.* (quoting 12 C.F.R. pt. 226, supp. I, subpt. A, cmt. 2(a)(17)(i)(2) (emphasis added)). The Supreme Court mandates that "[u]nless demonstrably irrational," FRB staff interpretations of the TILA and Regulation Z "should be dispositive." *Milhollin*, 444 U.S. at 565. The Dealership entered into a RIC with Najieb for the Cirrus, the terms of which, according to the Order, would become final only after the RIC was purchased by a bank or financial institution. *See* Def. Memo., Ex. 6. William Chrysler successfully structures such transactions for over two hundred customers a year. *See* Werthman Dep. at 25. If a financial institution had elected to extend

credit to Najieb, her obligation on the RIC, although initially payable on its face to William Chrysler, would have been simultaneously assigned to the financial institution. *See id.* Accordingly, William Chrysler is a creditor under the TILA.[15]

A creditor under the TILA must disclose certain terms governing credit transactions, including the annual percentage rate ("APR") and the finance charge, to consumers. *See* 12 C.F.R. §226.18(a), (d). Regulation Z requires that such disclosures be made "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. §226.17(a)(1). If the creditor does not know the "information necessary for an accurate disclosure . . . the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, shall state clearly that the disclosure is an estimate." 12 C.F.R. §226.17(c)(2)(i). All disclosures must be made "*before* consummation of the transaction." 12 C.F.R. §226.17(b) (emphasis added). "Consummation" of a transaction occurs at "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. §226.2(13).

Najieb alleges that William Chrysler violated the TILA by failing to disclose that the 15.0% APR set forth in the RIC was an estimate. We disagree. Even after entering into the RIC, Najieb was not contractually obligated to purchase the Cirrus. Indeed, Najieb's purchase of the Cirrus and the terms governing it were conditioned on William Chrysler obtaining financing from an outside source on her behalf. The condition was made explicit in the Vehicle Sales Order, which stated, in relevant part,

---

[15]It does not appear that the Seventh Circuit or the courts of the Northern District of Illinois have explicitly addressed the issue before us. The dispositions they have reached, however, in claims brought against automobile dealers under the TILA were only possible by treating the dealerships as creditors under the statute. *See Lifanda v. Elmhurst Dodge*, 237 F.3d 803 (7th Cir. 2001) (dealer that entered into RIC with customer subject to the TILA disclosure requirements); *see also Janikowski v. Lynch Ford*, 210 F.3d 765 (7th Cir. 2000) (dealer that entered into RIC with customer complied with the TILA disclosure requirements); *Leguillou v. Lynch* Ford, 2000 WL 198796, at *3 (N.D.Ill. Feb. 14, 2000) (same); Jasper *v. New Rogers Pontiac*, 1999 WL 1024522 (N.D.Ill. Nov. 5, 1999) (same).

"THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE AND IN THE EVENT OF A TIME SALE[16] DEALER SHALL NOT BE OBLIGATED TO SELL UNTIL APPROVAL OF THE TERMS HEREOF IS GIVEN BY A BANK OR FINANCE COMPANY WILLING TO PURCHASE A RETAIL INSTALLMENT CONTRACT BETWEEN THE PARTIES." Def. Memo., Ex. 6. Because the purchase by a bank or finance company of the RIC was a condition precedent to Najieb's purchase of the Cirrus, a binding obligation was never formed.[17] Consequently, William Chrysler did not violate the TILA by failing to disclose that the 15.0% APR set forth in the RIC was an estimate.

Najieb also claims that William Chrysler violated the TILA by including the charge for GAP Guardian insurance in the amount financed rather than including the fee as part of the finance charge. Regulation Z defines "finance charge" as the sum of all charges "payable directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. §226.4(a). The finance charge involves those "charges or premiums paid for debt cancellation coverage." 12 C.F.R. §226.4(b)(10). Because the condition precedent never occurred, William Chrysler would not have violated the TILA even if it had failed to disclose the finance charge. Accordingly, the Dealership's failure to include the GAP Guardian insurance fee in the finance charge is not actionable under the TILA. We therefore grant William Chrysler's motion for summary judgment on Count III.

## IV.    ICFA

In Count IV, Najieb contends that William Chrysler committed several violations of the ICFA, 815 ILCS 505/2 & 2C. Under Illinois law, "[a] complaint alleging a violation of consumer fraud must

---

[16]*See supra* note 13 for an explanation of the term "time sale."

[17]A condition precedent is "an event which must occur or an act which must be performed by one party to an existing contract before the other party is required to perform." *Vuagniaux v. Korte*, 652 N.E.2d 840, 842 (Ill. App. Ct. 1995).

be pled with the same particularity and specificity as that required under common law fraud." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996) (citing *People ex rel. Harrigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 174 (Ill. 1992)). Federal Rule of Civil Procedure 9 similarly requires that "all averments of fraud or mistake . . . be stated with particularity." As a federal court applying state law, we must attempt to resolve Najieb's claims under the ICFA as would the Illinois Supreme Court. *See Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 416-17 (7th Cir. 1997).

## A.    Section 2 Claims

Section 2 of the ICFA prohibits "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." 815 ILCS 505/2 (emphasis added). To prove that an act or practice was deceptive, Najieb must show the following: (1) William Chrysler engaged in a deceptive act or practice; (2) William Chrysler intended that Najieb rely on that deception; (3) William Chrysler's deception occurred in the course of conduct involving trade or commerce; and (4) William Chrysler's deception caused Najieb's damages. *See Priebe v. Autobarn*, 240 F.3d 584, 588-89 (7th Cir. 2001) (citing *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992)).[18]

---

[18]Najieb summarily contends that William Chrysler also violated Section 2 of the ICFA by engaging in unfair conduct. *See* Pl. Response Memo. at 7-8. In determining whether an act or practice is unfair this Court must examine: "(1) whether the [act or] practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (citing *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)). Najieb failed to plead this contention with particularity as required by state law and Federal Rule of Civil Procedure 9. *See supra* pp. 15-16.

In her response to William Chrysler's motion for summary judgment, Najieb fails to set forth any facts in support of her contention. *See* Pl. Response Memo. at 7-8. Instead, Najieb states her belief that "there exist triable issues regarding whether Defendant's conduct was unfair under the [above] factors. To the extent this involves judgment calls regarding 'ethics' and 'morality' it is a quintessential jury question." *Id.* at 8. Najieb does not identify those "triable issues" for this Court. Accordingly, we grant William Chrysler's motion for summary judgment as to Najieb's claim pertaining to unfair conduct in Count IV.

### 1. *Cirrus-Related Claim*

Najieb contends that William Chrysler violated Section 2 of the Act by failing to inform her that her purchase of the Cirrus and the terms governing it were conditioned on the Dealership obtaining financing on her behalf. We disagree. The ICFA provides that "[n]othing in this Act shall apply to . . . [a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1). The Illinois Supreme Court explained that "[u]nder this provision, conduct which is authorized by Federal statutes and regulations, such as those administered by the Federal Reserve Board, is exempt from liability under the [Illinois] Consumer Fraud Act." *Lanier v. Associates Finance, Inc.*, 499 N.E.2d 440, 447 (Ill. 1986). William Chrysler's disclosures to Najieb complied with Federal Regulation Z, and thereby adhere to the TILA. *See supra* pp. 14-15. Because the Federal Reserve Board administers the TILA, we find that, under Section 10b(1) of the ICFA, William Chrysler's compliance with the TILA's disclosure requirements is a complete defense to liability under the ICFA in this case. *See Lanier*, 499 N.E.2d at 447; *see also Hoffman v. Grossinger Motor Corp.*, 218 F.3d 680, 684 (7th Cir. 2000); *Franks v. Rockenbach Chevrolet Sales*, 1998 WL 919714, *3-4 (N.D.Ill. Dec. 30, 1998). Accordingly, this Court grants William Chrysler's motion for summary judgment on the Section 2 claim pertaining to the Cirrus under Count IV.

### 2. *Escort-Related Claim*

Najieb also argues that William Chrysler's conduct surrounding Najieb's use of the Escort violated Section 2 of the ICFA. Najieb claims that after returning the Cirrus to William Chrysler on February 14, 2001, the Dealership used its possession of her down payment of the Cirrus "as leverage to induce Plaintiff into purchasing a different vehicle, a Ford Escort," on February 14, 2001. Compl. at ¶33. Yet Najieb does not provide any material facts that William Chrysler's refusal to

return her down payment led her to purchase the Escort. To the contrary, in her Affidavit and Deposition, Najieb states that she never purchased the Escort. *See* Najieb Aff. at ¶¶3, 13, 16, 21, 23-24; *see also* Najieb Dep. at 52-53. She asserts that all documents governing the sale of the Escort, which bear her signature, were forged by William Chrysler. *See* Najieb Aff. at ¶¶3, 13, 15, 21, 23-24; *see also* Najieb Dep. at 37, 68-69, 72-73.[19] Najieb's Complaint, however, did not set forth a claim of forgery, let alone plead it with particularity as required by state law and the Federal Rules of Civil Procedure. This Court therefore wholly rejects Najieb's allegation that William Chrysler forged the documents detailing Najieb's purchase of the Escort.

Najieb further claims that on February 14, 2001, William Chrysler "misrepresented to her that the Escort was the only vehicle on the lot for which they could provide her with financing." Compl. at ¶35. Najieb fails to set forth any material facts in support of this portion of her Complaint. She instead provides an account of William Chrysler's conduct that rebuts her claim. In her Affidavit, Najieb avers that William Chrysler told her on February 14, 2001 that it would "try to find financing on a car similar to the Cirrus while I tried out the Escort." Najieb Aff. at ¶27. It was only after Najieb had the Escort that William Chrysler informed her that it was unable to locate financing on a vehicle similar to the Cirrus. *See id.* The only financing William Chrysler was able to obtain on Najieb's behalf was that for the Escort. *See* Def. Memo., Ex. 8.

The parties have, however, demonstrated that there is a genuine issue of material fact regarding Najieb's claim that William Chrysler misrepresented that her purchase of the Escort was conditioned on her trying out and liking the vehicle. *See* Compl. at ¶35; *see also* Najieb Dep. at 52,

---

[19]William Chrysler attached the documents in question to its Memorandum for Summary Judgment as Exhibit 15.

54; Najieb Aff. at ¶27. William Chrysler insists that Najieb's purchase of the Escort was governed only by the RIC and other pertinent documents. *See* Def. Memo, Ex. 15. There also remains a genuine issue of material fact as to whether Najieb repudiated her purchase of the Escort so that William Chrysler delivered the Escort to Najieb's home on February 17, 2001 under false pretenses. Najieb implies that she repudiated the contract on February 16, 2001 by purchasing a Cavalier from William Chevrolet and arranging for the return of the Escort to William Chrysler. *See* Najieb Aff. at 16; *see also* Def. Ex. 16. William Chrysler counters that under the terms governing Najieb's purchase of the Escort, she became bound to the contract when the Dealership successfully obtained financing on her behalf on February 17, 2001. We therefore deny both parties' motions for summary judgment on Najieb's Section 2 claim pertaining to the Escort under Count IV.

### B.    Section 2C Claim

Najieb alleges that William Chrysler violated Section 2C of the ICFA by failing to return her down payment of $1,000 after William Chrysler was unable to obtain financing on her behalf for the Cirrus. Section 2C states that "[I]f the furnishing of merchandise . . . is conditioned on the consumer's providing credit references or having a credit rating acceptable to the seller and the seller rejects the credit application of that consumer, the seller must return to the consumer any down payment. The retention by the seller of part or all of the down payment . . . is an unlawful practice within the meaning of this Act." 815 ILCS 505/2C.

Najieb made a $1,000 down payment on the Cirrus on January 27, 2001. Def. Memo., Ex. 6. Najieb returned the Cirrus to William Chrysler on February 14, 2001, after learning that the Dealership failed to obtain financing on her behalf. *See* Najieb Dep. at 52-53. At that point, William Chrysler was required under Section 2C to return Najieb's down payment. *See Roche v. Fireside*

*Chrysler-Plymouth, Mazda*, 600 N.E.2d 1218, 1226 (Ill. App. Ct. 1992) (the seller is required to return the consumer's down payment upon rejection of the consumer's application for credit). The Dealership instead applied Najieb's down payment on the Cirrus as a down payment on the Escort. *See* Def. Reply Memo. at 5 (citing Def. Memo., Ex. 15). In doing so, the Dealership retained Najieb's down payment in violation of Section 2C of the ICFA.

The ICFA, however, requires that a person also suffer actual damage in order to succeed in a bringing a claim under the Act. *See* 815 ILCS 505/10a. A genuine issue of material fact remains as to whether Najieb suffered actual damage as a result of William Chrysler's retention of her down payment. William Chrysler argues that Najieb has failed to plead with specificity any actual damages she suffered as a result of the Dealership's application of her down payment on her purchase of the Escort. *See* Def. Reply Memo. at 4-5. Furthermore, William Chrysler asserts that it returned her down payment in full on February 20, 2001, by tendering a check to her in the amount of $1,000. *See* Def. Ex. 5. Najieb considered William Chrysler's check to be a settlement offer made in response to a settlement demand advanced by Najieb's attorney.[20] *See* Najieb Dep. at 26-27. Najieb rejected the offer and believes that William Chrysler has yet to return her $1,000 down payment. *See id.* Consequently, this Court denies both parties motions for summary judgment as to the Section 2C claim under Count IV.

## V.    TRESPASS TO CHATTEL

In Count five, Najieb contends that William Chrysler committed the tort of trespass to chattel when it failed to return her $1,000 down payment after it was unable to obtain financing on her behalf

---

[20]Najieb protests that evidence of settlement demands and offers are inadmissible under Federal Rule of Evidence 408. *See* Pl. Statement of Facts at ¶21. It has not yet been established, however, that William Chrysler was making a settlement offer in tendering the check to Najieb.

for the Cirrus. To prove that William Chrysler committed trespass to chattel, Najieb must show that the Dealership intentionally dispossessed her of the $1,000, and that the dispossession resulted in damages. Restatement (Second) of Torts §§217-218, 221-222.

William Chrysler first argues that it did not dispossess Najieb of the $1,000. We disagree. Under the Restatement (Second) of Torts, a dispossession "may be committed by intentionally barring the possessor's access to a chattel." *Id.* at §221(c). Najieb returned the Cirrus to William Chrysler on February 14, 2001, after learning that the Dealership failed to obtain financing on her behalf. *See* Najieb Dep. at 52-53. The Dealership concedes that instead of returning Najieb's down payment to her, it applied the $1,000 to her purchase of the Escort. *See* Def. Reply Memo. at 5 (citing Def. Memo., Ex. 15). In doing so, William Chrysler intentionally barred Najieb's access to her down payment on the Cirrus.

William Chrysler, however, insists that it had the right to retain and apply Najieb's down payment on the Cirrus in such a manner. *See* Def. Reply Memo. at 18. To the contrary, state law required William Chrysler to return Najieb's down payment once it failed to obtain financing on her behalf for the Cirrus. *See* 815 ILCS 505/2C; *see also supra* Count IV, Part B, pp.19-20. William Chrysler is not relieved of liability even if a mistake of law or fact led it to reasonably believe that it could dispossess Najieb of her down payment. *See* Restatement (Second) Torts §244.

There remains, however, a genuine issue of material fact as to whether Najieb suffered damages as a result of William Chrysler's dispossession of her down payment. According to the Restatement, "dispossession is always a trespass to the chattel, and subjects the actor to liability for at least nominal damages for the interference with the possession." *Id.* at §222. William Chrysler asserts that Najieb suffered no damages because it returned her down payment in full on February

20, 2001, by tendering a check to her in the amount of $1,000. *See* Def. Ex. 5. Najieb considered

William Chrysler's check to be a settlement offer made in response to a settlement demand advanced

by Najieb's attorney.[21] *See* Najieb Dep. at 26-27. Najieb rejected the offer and believes that William

Chrysler has yet to return her $1,000 down payment. *See id*. Accordingly, this Court denies both

parties motion for summary judgment on Count V.

## CONCLUSION

For the foregoing reasons, this Court denies Najieb's motions to deem her submitted facts

admitted and to strike William Chrysler's motion for summary judgment. With regard to William

Chrysler's motion for summary judgment, we grant its motion on Counts II and III, deny its motion on

Counts I and V, and grant in part and deny in part its motion on Count IV. We deny Najieb's motion for

summary judgment on Counts I, III, IV, and V. It is so ordered.

                           MARVIN E. ASPEN
                           United States District Judge

Dated _____

---

[21]Najieb protests that evidence of settlement demands and offers are inadmissible under Federal Rule of Evidence 408. *See* Pl. Statement of Facts at ¶21. It has not yet been established, however, that William Chrysler was making a settlement offer in tendering the check to Najieb.